IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE A. SOTO-HERNANDEZ,

    Plaintiff,

    v.                                    CIVIL NO. 04-1745 (RLA)

AGUSTIN CARTAGENA, et al.,

    Defendants.

## **ORDER AWARDING BACK PAY AND ORDERING REINSTATEMENT**

The Court having heard the evidence presented at the default bench trial held in this case on February 27, 2007,[1] hereby finds as follows:

### **PROCEDURAL BACKGROUND**

Plaintiff filed this 42 U.S.C. § 1983 action against defendants PEDRO TOLEDO,[2] PIERRE VIVONI, and VICTOR RIVERA, present and former Superintendents of the Puerto Rico Police Department, and WANDA ROCHA, Deputy Superintendent,[3] alleging violations of the Fifth and Fourteenth Amendments of the Constitution of the United States and

---

[1] Plaintiff waived his right to a jury trial. See docket No. 84.

[2] Substituted former Superintendent AGUSTIN CARTAGENA. See docket No. 45.

[3] The claims against co-defendants PABLO RODRIGUEZ, JOSE R. AYALA and CESAR GRACIA were dismissed without prejudice on December 23, 2004, docket No. 25.

corresponding Articles of the Constitution of the Commonwealth of Puerto Rico.[4]

**RULE 55**

"As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." Goldman, Antonetti, Ferraiouli & Hertell v. Medfit Int'l, Inc., 982 F.3d 686, 693 (1st Cir. 1993) (citation, internal brackets and quotation marks omitted). See also, KPS & Assoc., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 9 (1st Cir. 2003) ("[D]efault having been entered, each of plaintiff's allegations of fact are established as a matter of law."); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.3d 5, 13 (1st Cir. 1985) ("[D]efault having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its... claims must be considered established as a matter of law.")

Once liability is found, the factfinder is *required* to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." Libertad v. Sanchez, 215 F.3d 206, 207 (1st Cir. 2000) (citation, internal brackets and quotation marks omitted) (emphasis in original).

---

[4] The claims filed pursuant to the First Amendment and the Puerto Rico's Anti-Retaliation Act, P.R. Laws Ann. Tit. 29 §§ 194-194b were also voluntarily dismissed. See docket Nos. 43 and 48, respectively.

## ALLEGATIONS IN THE COMPLAINT

1. On May 15, 1998, through letter number OS-4-9-220, plaintiff was expelled from the Puerto Rico Police Department purportedly for having failed a drug test. Plaintiff appealed said action to the "Comisión de Investigación, Procesamiento y Apelación" ("the CIPA") under case number 98-82.

2. Through Resolution dated November 28, 2000, and notified on December 22, 2000, the CIPA revoked the appealed decision and ordered plaintiff's reinstatement to the Police Department. Among other findings, the CIPA unanimously determined that plaintiff's expulsion from the Police Force had been illegal and carried out in violation of plaintiff's Due Process rights guaranteed by both the Constitution of the United States and of Puerto Rico.

3. On January 9, 2001, defendant Pierre E. Vivoni executed letter number OS-4-32-018, addressed to plaintiff, whereby he acknowledged receipt of the CIPA's Resolution and stated that the Human Resources Division of the Police Department would make the necessary arrangements to reinstate him as commanded by the CIPA Resolution. Plaintiff received said letter on April 10, 2001.

4. During August of 2001, plaintiff was required to attend various medical appointments at the Police Department's Medical Division and to undergo a complete medical evaluation, all of which he attended as required.

**CIVIL NO. 04-1745 (RLA)** **Page 4**

5.  Meanwhile, plaintiff visited on multiple occasions various offices and divisions at the Police Department seeking information regarding his delayed reinstatement process without success. He received no concrete or official answers to his repeated requests.

6.  On December 19, 2001, plaintiff received a telephone call commanding him to report immediately to the Human Resources Division for reinstatement. Through letter number AC-1-10-793, plaintiff was reinstated to new functions effective immediately.

7.  The specific reasons for the assignment of new functions were never explained nor provided to plaintiff. However, the December 18, 2001 letter (number SAOC-1-12-1329) which ordered plaintiff's reinstatement to the Caguas area, referred to a purported medical determination that plaintiff had an unidentified emotional condition. Thus plaintiff was ordered assigned to administrative duties, in civilian clothes, with no access to weapons or firearms.

8.  By letter number NRH-1-5-568, dated December 17, 2001, the Human Resources Director referred plaintiff to the Deputy Superintendent of Police for reinstatement. The letter alluded to the following letters: letter number OS-10-15-2180 of September 17, 2001 from the Medical Division; letter number OS-4-2-1-321 of December 13, 2001 from the Legal Division; and letter number OS-4-27-650 of November 7, 2001 by defendants Vivoni and Rocha Santiago.

9.  On December 20, 2001, plaintiff requested and was denied copy of the three letters in various offices and divisions of the

**CIVIL NO. 04-1745 (RLA)**                                                                 **Page 5**

Police Department, including former defendants Gracia and Ayala and a subordinate of defendant Rodríguez. After various attempts, plaintiff was told that the letters were confidential.

10. Accordingly, plaintiff was reinstated at the Aguas Buenas Precinct, performing administrative work as a civilian due to a yet unknown, unseen, and uncorroborated medical determination. It was at this time that plaintiff received a partial payment of the back pay to which he was entitled, including vacations, salary increases and accrued interests.

11. On December 27, 2001, plaintiff received a copy of an urgent memo from Deputy Superintendent Gracia, with copy of a November 7, 2001 letter from defendants Vivoni and Rocha Santiago, through which he was informed of the Superintendent's decision to terminate him due to the alleged medical determination that he was not able to perform the duties of his post. The November 7, 2001, letter did not disclose the nature of the alleged disability, but advised plaintiff that he could request a pretermination hearing within the next fifteen days and that his failure to do so would be tantamount to a waiver of his right to a hearing.

12. Upon receipt of the November 7, 2001 letter, plaintiff requested once again, to no avail, copies of the September 17, 2001, letter from the Medical Office and of the December 13, 2001 letter from the Legal Division.

**CIVIL NO. 04-1745 (RLA)**                                                    **Page 6**

     13.  Plaintiff requested the pre-termination hearing within the fifteen-day term.  Together with the request for the hearing, plaintiff requested among other things, copy of the applicable regulations of the pre-termination process, an identification of the purported medical condition, and all the evidence in which the purported medical condition was based. Plaintiff's requests remained unanswered.

     14.  On September 25, 2002, an administrative hearing was held at the Police Department regarding the proposed lay-off of plaintiff due to the alleged medical determination that plaintiff was permanently impaired to perform the duties of his post due to an alleged disabling mental condition.

     15.  Plaintiff appeared at the hearing, expressly stating for the record that he was not waiving any of the federal constitutional rights hereby asserted.

     16.  The Police Department's only witness at the hearing, Dr. Eladio Montalvo Frabellas, a psychiatrist that had evaluated plaintiff, testified that he never was of the opinion that plaintiff, agent Soto Hernández, was permanently disabled from performing his duties as a police agent. Dr. Montalvo also testified that there was no evidence in the record that plaintiff had any mental condition that could impair his return to his previous position.

     17.  Notwithstanding the clear admission of the Police Department's only witness, defendants, in a March 11, 2003,

**CIVIL NO. 04-1745 (RLA)**                                                                 **Page 7**

Resolution (letter number OS-4-10-153), determined that plaintiff would be dismissed effective immediately upon notification. To sustain that determination, the resolution referred to an analysis of plaintiff's record.

    18.  On July 22, 2003, plaintiff was notified via letter number OS-4-10-153 that he was immediately dismissed.

### DUE PROCESS

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

"In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures." DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "Unlike substantive due process, which is concerned primarily with why the government deprives a person of life, liberty or property, procedural due process is concerned with how the government deprives a person of life, liberty or property. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Paul H. Tobias, 2 Lit. Wrong. Discharge Claims § 7.11.

In order to properly assert a procedural due process claim under § 1983, "[p]laintiffs must allege they have a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived them of that property interest without

**CIVIL NO. 04-1745 (RLA)**                                                           **Page 8**

constitutionally adequate process." Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 53 (1st Cir. 2005) (citation, brackets and internal quotation marks omitted); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 46 (1st Cir. 2004); Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Rumford Pharmacy v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992); PFZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland v. Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation and internal quotation marks omitted). Meaningful due process includes "notice and an opportunity to be heard." Cosme-Rosado, 360 F.3d at 46 (citation omitted).

As part of his due process guarantee, a career employee "is entitled to notice and a meaningful opportunity to respond prior to termination. Before a career employee is discharged, he is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Cepero-Rivera v. Fagundo, 414 F.3d 124, 134 (1st Cir. 2005) (citation and internal quotation marks omitted). "A tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employers' evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546.

**CIVIL NO. 04-1745 (RLA)**                                                              **Page 9**

The above factual allegations in the complaint, when credited as they must be, clearly establish that plaintiff's procedural due process rights were consistently violated. Defendants failed to provide plaintiff with evidence of his alleged "medical condition"; failed to provide answers or explanations for their failure to timely reinstate him according to the CIPA Resolution; failed to explain why he was assigned new functions when he was briefly reinstated; and failed to provide him with copies of alleged detrimental letters and documentation in his personnel record. In sum, plaintiff did not receive an explanation nor a showing of the evidence relied upon by his employer for the actions taken against him, nor an opportunity to present his side of the story. Cepero-Rivera, 414 F.3d 134.

## COMPENSATORY DAMAGES

### Pre-reinstatement Leave and Bonus Owed

Pursuant to the evidence presented at the hearing, plaintiff had accumulated vacation and a bonus for the 1998-2000 period that were not fully compensated when he was briefly reinstated in December of 2001. These include 15 days vacation in the year 2000, and a Christmas Bonus for the same year. Accordingly, the Court FINDS that plaintiff is entitled to receive compensation in the amount of **$5,000.00** for 15 days vacation and Christmas bonus owed prior to his first reinstatement.

**CIVIL NO. 04-1745 (RLA)**                                                                 **Page 10**

### Back Pay

Relying on the VIRGILIO VEGA CPA report, dated September 26, 2006 (CPA Report), which was admitted as evidence at the damages trial, the Court hereby awards back pay compensation to plaintiff in the amount of **$104,664.00, calculated to the date of the hearing, February 27, 2007.**

### Mental Suffering

Having considered the testimony of the plaintiff as to the emotional pain he endured after his illegal termination by the Police Department, the Court finds that an award of **$25,000.00** is both reasonable and appropriate under § 1983.

### PUNITIVE DAMAGES

Finally, despite plaintiff's allegations to the contrary, the Court finds no evidence that defendants acted recklessly or with callous indifference and conscious disregard of plaintiff's constitutional rights such as to justify an award of punitive damages in this case. Accordingly, plaintiff's request for an award of punitive damages is **DENIED.**

### EQUITABLE RELIEF

Plaintiff has requested front pay as a remedy in these proceedings which defendants have opposed.

### Eleventh Amendment

Defendants contend that plaintiff's request for front pay is barred by the Eleventh Amendment. However, prospective compliance

**CIVIL NO. 04-1745 (RLA)**                                                             **Page 11**

with equitable relief does not contravene the Eleventh Amendment even if it entails concomitant expenditures. "[F]ederal courts [may] enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." Milliken v. Bradley, 433 U.S. 267, 289, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). *See also*, Asoc. De Suscripcion Conjunta v. Flores Galarza, 484 F.3d 1 (1st Cir. 2007) ("prospective declaratory and injunctive relief... is not barred by the Eleventh Amendment."); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (1st Cir. 1996) ("*prospective, injunctive relief*... to conform... future, official conduct to the dictates of the Fourteenth Amendment" not barred by Eleventh Amendment) (italics in original). "[W]hen a suit seeks equitable relief or money damages from a state officer for injuries suffered in the past, the interests in compensation and deterrence are insufficiently weighty to override the State's sovereign immunity. On the other hand, although prospective relief awarded against a state officer also implicates Eleventh Amendment concerns, the interests in ending a continuing violation of federal law outweigh the interests in state sovereignty and justify an award under § 1983 of an injunction that operates against the State's officers or even directly against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 89-90, 109 S.Ct. 2304, 105 L.Ed.2d. 45 (1989) (internal citations, brackets and quotation marks omitted).

**CIVIL NO. 04-1745 (RLA)**                                                          **Page 12**

### Court's Discretion

The Court is empowered to grant equitable relief as part of the remedies available for § 1983 violations. "Once a constitutional violation has been found, a district court has broad powers to fashion a remedy." Sharp v. Weston, 233 F.3d 1166, 1173 (9th Cir. 2000). "Once a right and a [constitutional] violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breath and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

"Reinstatement and front pay are equitable remedies that require the district court to take a flexible approach." Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 42 (1st Cir. 2003) (internal citation and quotation marks omitted). In fashioning a remedy the Court will consider the underlying interests behind the particular provision violated by the defendant. Che, 342 F.3d at 43.

### Front Pay

Front pay is the award granted a plaintiff for lost compensation for the time elapsed between the time judgment is issued and reinstatement is effected or in lieu of reinstatement. "[F]ront pay... compensates the plaintiff for the loss of future earnings." Ramos v. Davis & Geck, Inc., 167 F.3d 727, 733 (1st Cir. 1999).

Ordinarily reinstatement should be preferred over front pay. "'Front pay should not be awarded unless reinstatement is

**CIVIL NO. 04-1745 (RLA)**                                                      **Page 13**

impracticable or impossible.'" Arrieta Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 91 (1st Cir. 2006) (citing Johnson v. Spenser Press. of Me., Inc., 364 F.3d 368, 380 (1st Cir. 2004)); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 67 (1st Cir. 2005); Ramos v. Davis, 167 F.3d at 733.

### Reinstatement

In wrongful dismissal cases, job restoration may be a material aspect of meaningful relief." Borges Colon v. Roman Abreu, 438 F.3d 1, 20 (1st Cir. 2006) (internal citation and quotation marks omitted).

"[D]amage awards [do not] obviate the need for reinstatement... when a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole, because the psychological benefits of work are real and cannot be ignored." Borges Colon, 438 F.3d at 20 (internal citations, brackets and quotation marks omitted).

In order to ascertain whether reinstatement is feasible, the courts have considered: (1) the strength of the evidence, (2) if the plaintiff found comparable employment; (3) property right over the position and (4) ineligibility for the position. Che, 342 F.3d at 43 n.1. *See also*, Borges-Colon, 438 F.3d at 20. "Because [re]instatement is an equitable remedy, the decision to order [re]instatement must be made on a case-by-case basis in light of these factors and the particular circumstances in the case." Bullen, 336 F.Supp.2d at 359.

**CIVIL NO. 04-1745 (RLA)** **Page 14**

"Routinely incidental burdens of reinstatement - for example, tension in the workplace, or displacement of employees who had taken on duties previously handled by the fired workers - are foreseeable sequelae of defendant's wrongdoing, and usually insufficient without more, to tip the scales against reinstatement ... in a section 1983 action." Borges-Colon, 438 F.3d at 20 (internal citation, bracket and quotation marks omitted). Mere hostility caused by the reinstatement is not enough to deny this remedy. Rather, an "extraordinary antagonism" must be present to support its denial. Che, 342 F.3d at 43.

After considering the arguments on reinstatement set forth in plaintiff's motions and defendants' opposition thereto, and after review of the evidence presented at trial, we find that reinstatement of plaintiff to his previous position at the Puerto Rico Police Department is both proper and justified.

At the bench trial on damages that was held on February 27, 2007, the Court heard evidence to the effect that plaintiff has been unable to find comparable work since his discharge. He worked odd jobs, as messenger, in construction, assisting businesses, administering a bar, but has generally had trouble finding gainful employment. This factor weighs heavily in favor of reinstatement.

Furthermore, there is nothing in the record to suggest that plaintiff is NOT eligible for the position he previously held at the Police Department. Although a factor that militates against this is

the length of time which has elapsed between his dismissal and his possible reinstatement -- six years in this case --, when viewed against the background of all the other factors that run in plaintiff's favor, this element weighs lightly against reinstatement.

Third, plaintiff had a property right in the position he held at the Police Department. He was not there at will; he was in a permanent position from which he had an expectation of continued employment. This factor weighs substantially in favor of reinstatement.

Finally, although we are cognizant that "a court-ordered reunion between employer and employee may burden government operations with the hostility and antagonism that as a consequence is revived in the aftermath of litigation"... the Court views this burden as the foreseeable results of defendant's own wrongdoing, and "insufficient, without more, to tip the scales against reinstatement...". Tejada-Batista v. Fuentes Agostini, 263 F.Supp.2d 321, 325 (D.P.R. 3003) (internal citations omitted).

### PREJUDGMENT INTEREST

The award of prejudgment interest is within the sound discretion of the trial court. Earnheart v. Puerto Rico, 744 F.2d 1, 3 (1st Cir. 1984).

Prejudgment interest is considered an element of complete compensation to a plaintiff. Thus,"[p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time

**CIVIL NO. 04-1745 (RLA)**                                                                 **Page 16**

the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress" West Virginia v. United States, 479 U.S. 305, 310 n.2. (1987). "To the extent, however, that the damages awarded to plaintiff represent compensation for lost wages, 'it is ordinarily an abuse of discretion *not* to include pre-judgment interest'." Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998)(citing Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 145 (2d Cir. 1993) (emphasis in original). "Awarding prejudgment interest in such cases prevents the defendant employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages, and helps to ensure that plaintiff is meaningfully made whole..." Id., at 874 (internal citations and quotation marks omitted).[5]

The record reveals that plaintiff was discharged on July 22, 2003, and our default trial was not held until February of 2007. Accordingly, mindful that the underlying purpose of prejudgment interest is to fully compensate the plaintiff, we choose to make an award of prejudgment interest in order to make plaintiff whole. The prejudgment interest shall be calculated from the time plaintiff was fired from the Police Force, in July of 2003, until the time judgment is entered in this action, at the legal rate set forth in P.R. Laws Ann. tit. 31, § 3025 (1991).

---

[5] We note here that an award of prejudgment interest is not appropriate with respect to a future losses award. See, e.g. Scarfo v. Cabletron Systems, Inc., 54 F.3d 931, 961 (1st Cir. 1995).

**CIVIL NO. 04-1745 (RLA)**                                                          **Page 17**

## CONCLUSION

In summary, the Court makes the following awards to plaintiff:

| | |
|---|---:|
| Pre-reinstatement leave and bonus | **$ 5,000.00*** |
| Back Pay (7/22/03 - 2/27/07) | **$104,664.00*** |
| Back Pay from 2/27/07 until date of judgment | **$ 19,579.14*[6]** |
| Front Pay from judgment to reinstatement | $ --------- |
| Emotional pain and suffering | **$ 25,000.00** |

It is further ORDERED that plaintiff shall be REINSTATED forthwith to a position equivalent to the one he held at the time of his illegal termination from the Police Department in July of 2003.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 31st day of October, 2007.

                                                  S/Raymond L. Acosta
                                                  RAYMOND L. ACOSTA
                                           United States District Judge

---

[6] 246 days from 2/28/07 - 10/31/07 calculated at $79.59/day.

***** Prejudgment interest shall be applied to this figure, at the legal rate of 6%, P.R. Laws Ann. tit. 31, § 3025.